1
2
3
4
5
6
7
8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11   GERALD W. DICKSON,                    )   Case No.: 1:12-cv-01015-LJO-JLT
                                           )
12                  Petitioner,            )   FINDINGS AND RECOMMENDATIONS TO
                                           )   SUMMARILY DISMISS PETITION FOR WRIT
13          v.                             )   OF HABEAS CORPUS FOR LACK OF
                                           )   JURISDICTION
14   WARDEN, AVENAL STATE PRISON,          )
                                           )   ORDER DIRECTING THAT OBJECTIONS BE
15                  Respondent.            )   FILED WITHIN TWENTY DAYS
                                           )
16   _____   )

17

18          Petitioner is a state prisoner proceeding in propria persona with a petition for writ of habeas

19   corpus pursuant to 28 U.S.C. § 2254.

20                          **PROCEDURAL HISTORY**

21          On June 22, 2012, Petitioner filed the instant petition for writ of habeas corpus.  (Doc. 1).

22   Petitioner challenges the California court decisions upholding a May 12, 2010 decision of the

23   California Board of Parole Hearings ("BPH") finding Petitioner unsuitable for parole.  Petitioner

24   claims the California courts unreasonably determined that there was some evidence that he posed a

25   current risk of danger to the public if released on parole and that the BPH's decision was arbitrary and

26   was not based on "some evidence" in the record.

27   ///

28
                                              1

I. <u>Preliminary Screening of the Petition.</u>

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.  The Court must summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court...."  Habeas Rule 4; <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990); <u>see also Hendricks v. Vasquez</u>, 908 F.2d 490 (9th cir. 1990). Habeas Rule 2( c) requires that a petition (1) specify all grounds of relief available to the Petitioner; (2) state the facts supporting each ground; and (3) state the relief requested.  Notice pleading is not sufficient; rather, the petition must state facts that point to a real possibility of constitutional error. Rule 4, Advisory Committee Notes, 1976 Adoption; <u>O'Bremski</u>, 915 F.2d at 420.  Allegations in a petition that are vague, conclusory, or palpably incredible are subject to summary dismissal. <u>Hendricks</u>, 908 F.2d at 491.

Further, the Advisory Committee Notes to Rule 8 indicate that the Court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed.  Advisory Committee Notes to Habeas Rule 8, 1976 Adoption; <u>see</u> <u>Herbst v. Cook</u>, 260 F.3d 1039 (9th Cir.2001).

II. <u>Failure to State a Claim Cognizable Under Federal Habeas Corpus</u>

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997). The instant petition was filed on June 22,  2012, and thus, it is subject to the provisions of the AEDPA.

Here, Petitioner alleges that he is an inmate of the California Department of Corrections and Rehabilitation who is serving a sentence of thirty-eight-years-to-life imposed in the Fresno County Superior Court after Petitioner's 1983 convictions for the first degree murder of Ida Maria Husler and the robbery and sexual assault of Karen Bing.  (Doc. 1, pp. 4-5).  Petitioner does not challenge either

his convictions or sentence; rather, Petitioner challenges May 12, 2010 decision of the BPH finding him unsuitable for parole and its decision to wait ten years to schedule another parole suitability hearing.  (Doc. 1, p. 11)

Although the petition does not expressly articulate a claim, it recounts what Petitioner believes is strong evidence supporting his parole suitability and weak evidence against it, including the BPH's reliance in part upon Petitioner's determinate sentence in the Bing case.  Accordingly, it is apparent that Petitioner's claim contends that the BPH's decision is unlawful because it is not supported by adequate, or "some," evidence, that it is arbitrary and that it ignores evidence of Petitioner's suitability for parole.

A.  <u>Substantive Due Process Claims And California's "Some Evidence" Standard</u>

As discussed more fully below, the claims in the petition sound exclusively in substantive federal due process and therefore are not cognizable in these proceedings.

The basic scope of habeas corpus is prescribed by statute.  Subsection (c) of Section 2241 of Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless he is "in custody in violation of the Constitution."  28 U.S.C. § 2254(a) states that the federal courts shall entertain a petition for writ of habeas corpus only on the ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §§ 2254(a)(, 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n. 7, 120 S.Ct. 1495 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. ___, 131 S.Ct. 13, 16 (2010); <u>see also</u>, Rule 1 to the Rules Governing Section 2254 Cases in the United States District Court.  The Supreme Court has held that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody . . ." <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 484 (1973).  Furthermore, in order to succeed in a petition pursuant to 28 U.S.C. § 2254, Petitioner must demonstrate that the adjudication of his claim in state court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

1    Because California's statutory parole scheme guarantees that prisoners will not be denied

2    parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals has held

3    that California law creates a liberty interest in parole that may be enforced under the Due Process

4    Clause. Hayward v. Marshall, 602 F.3d 546, 561-563 (9th Cir.2010); Pearson v. Muntz, 606 F.3d 606,

5    608-609 (9th Cir. 2010); Cooke v. Solis, 606 F.3d 1206, 1213 (2010), rev'd, Swarthout v. Cooke, ___

6    U.S.___, ___ S.Ct. ___, 2011 WL 197627 (Jan. 24, 2011).  The Ninth Circuit instructed reviewing

7    federal district courts to determine whether California's application of California's "some evidence"

8    rule was unreasonable or was based on an unreasonable determination of the facts in light of the

9    evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

10    On January 24, 2011, the Supreme Court issued a per curiam opinion in Swarthout v. Cooke,

11    562 U.S.___, ___ S.Ct. ___, 2011 WL 197627 (No. 10-133, Jan. 24, 2011).  In that decision, the

12    United States Supreme Court agreed that California law creates a liberty interest in parole and that this

13    interest is protected by the Fourteenth Amendment's Due Process Clause.  Thus, the Court required

14    that the procedures with respect to the liberty interest, must be fair.  Swarthout, 2011 WL 197627, *2.

15    However, the procedures required for a parole determination are the minimal requirements set

16    forth in Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 12, 99 S.Ct. 2100

17    (1979).[1]  Swarthout v. Cooke, 2011 WL 197627, *2.  In Swarthout, the Court rejected inmates' claims

18    that they were denied a liberty interest because there was an absence of "some evidence" to support

19    the decision to deny parole.  In doing so, the Court stated as follows:

> There is no right under the Federal Constitution to be conditionally released before the
> expiration of a valid sentence, and the States are under no duty to offer parole to their
> prisoners. (Citation omitted.)  When, however, a State creates a liberty interest, the Due
> Process Clause requires fair procedures for its vindication–and federal courts will review the
> application of those constitutionally required procedures.  In the context of parole, we have
> held that the procedures requires are minimal.  In Greenholtz, we found that a prisoner subject
> to a parole statute similar to California's received adequate process when he was allowed an
> opportunity to be heard and was provided a statement of the reasons why parole was denied.
> (Citation omitted.)

Swarthout, 2011 WL 197627, *2.

_____

[1]In Greenholtz, the Court held that a formal hearing is not required with respect to a decision concerning granting or denying discretionary parole and that due process is sufficient to permit the inmate to have an opportunity to be heard and to be given a statement of reasons for the decision made.  Id. at 15-16.  The decision maker is not required to state the evidence relied upon in coming to the decision.  Id.

4

The Court concluded that the petitioners had received the due process to which they were due:

> They were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied...

> That should have been the beginning and the end of the federal habeas courts' inquiry into whether [the petitioners] received due process.

Swarthout, 2011 WL 197627, *3. The Court went on to expressly point out that California's "some evidence" rule is not a substantive federal requirement, and correct application of the State's "some evidence" standard is not required by the federal Due Process Clause. Id. at *3. The Supreme Court emphasized that "the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business." Id.

Swarthout forecloses any claim premised upon California's "some evidence" rule because this Court cannot entertain substantive due process claims related to a state's application of its own laws. Here, the claims in the petition sound exclusively in substantive due process and are therefore foreclosed by Swarthout. Review of the record for "some evidence," or for a "nexus" between present dangerousness and certain indicia, or the BPH's reliance upon the circumstances of the commitment offense to support denial of parole, are simply not within the scope of this Court's habeas review under 28 U.S.C. § 2254. Accordingly, the petition should be summarily dismissed.

Moreover, to the extent that the claims in the petition rest solely on state law, they are not cognizable on federal habeas corpus. Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation. Wilson v. Corcoran, 562 U.S. ___, 131 S.Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475 (1991). Alleged errors in the application of state law are not cognizable in federal habeas corpus. Souch v. Schiavo, 289 F.3d 616, 623 (9th Cir. 2002). Indeed, federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), cert. denied, 493 U.S. 942 (1989).

B. Procedural Due Process

Petitioner has neither claimed nor established a violation of his federal right to procedural due

1    process.  Petitioner has included a transcript of the BPH hearing.  (Doc. 1, p. 29 et seq.).  From a

2    review of that transcript, it is clear that Petitioner was present at the BPH hearing, that he had an

3    opportunity to be heard, that he was represented by counsel who also attended the hearing and argued

4    on Petitioner's behalf, and that Petitioner received a statement of the Board's reasons for denying

5    parole.  (Doc. 1, pp. 29-162).

6           According to the Supreme Court, this is "the beginning and the end of the federal habeas

7    courts' inquiry into whether [the prisoner] received due process."  <u>Swarthout</u>, 2011 WL 197627.  "The

8    Constitution does not require more [process]."  <u>Greenholtz</u>, 442 U.S. at 16.  Therefore, the instant

9    petition does not present cognizable claims for relief and should be summarily dismissed.

10          C.  <u>Proposition 9 Violates The Federal Ex Post Facto Clause</u>

11          In the petition, Petitioner notes that, pursuant to "Marcy's Law," i.e., Proposition 9, which

12   permits the BPH to delay an inmate's next parole hearing for up to fifteen years, the BPH put off any

13   further parole suitability hearing for ten years.  Petitioner complains that he was unaware at the

14   hearing that Marcy's Law would apply and therefore made no objection to it at the time.  The Court

15   construes Petitioner's contention as an argument that Proposition 9 violates the federal ex post facto

16   law by being applied to his case.  The Court rejects this contention.

17          "The States are prohibited from enacting an ex post facto law."  <u>Garner v. Jones</u>, 529 U.S. 244,

18   249 (2000)(citing U.S. Const., art. I, § 10, cl. 1).  "One function of the Ex Post Facto Clause is to bar

19   enactments which, by retroactive operation, increase the punishment for a crime after its commission."

20   <u>Id</u>.  Although retroactive changes in laws governing parole of inmates may violate the Ex Post Facto

21   Clause, "not every retroactive procedural change creating a risk of affecting an inmate's terms or

22   conditions of confinement is prohibited."  <u>Id</u>. at 250.  A retroactive procedural change violates the Ex

23   Post Facto Clause when it "creates a significant risk of prolonging [an inmate's] incarceration."  <u>Id</u>. at

24   251.  A "speculative" or "attenuated" risk of prolonging incarceration is insufficient to establish a

25   violation of the Ex Post Facto Clause.  <u>Cal. Dept. Of Corr. V. Morales</u>, 514 U.S. 499, 509 (1995).

26   Thus, in order to establish an Ex Post Facto Clause violation, (1) an inmate must show that Proposition

27   9, on its face, creates a significant risk of increasing the punishment of California life-term inmates, or

28

                                                    6

(2) the inmate must "demonstrate, by evidence drawn from [Proposition 9's] practical implementation...that its retroactive application will result in a longer period of incarceration than under the [prior law]."  <u>Garner</u>, 529 U.S. at 255.

Prior to the enactment of Proposition 9, California law required that a state inmate receive an annual parole hearing unless, when certain circumstances were present, the BPH scheduled the hearing for between two and five years hence.  Cal. Pen. Code § 3041.5(b)(2).  In 2010, Proposition 9 amended California law to eliminate the annual parole hearing and permit the BPH to schedule future hearings between three and fifteen years hence.  Cal. Pen. Code § 3041.5(b)(3)(2010).

In <u>Gilman v. Schwarzenegger</u>, 2011 WL 198435 (9th Cir. Jan. 24, 2011), the Ninth Circuit rejected an inmate's ex post facto challenge to Proposition 9.  After noting that "Proposition 9 did not increase the statutory punishment for any particular offense, did not change the date of inmates' initial parole hearings, and did not change the standard by which the Board determined whether inmates were suitable for parole," the Court went on to consider the effect of the greater delays between parole hearings on the inmate's period of incarceration, and concluded that no federal violation occurred:

> Even assuming, without deciding, that the statutory changes decreasing the frequency of scheduled hearings would create a risk of prolonged incarceration, the availability of advance hearings is relevant to whether the changes in the frequency of parole hearings create a significant risk that prisoners will receive a greater punishment.  <u>Garner</u>, 529 U.S. at 256-257; <u>Morales</u>, 514 U.S. at 512.
> ...
> Here, advance hearings are explicitly made available by statute: 'The board may in its discretion...advance a hearing...to an earlier date, when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner.' Cal. Penal Code § 3041.5(b)(4).  The Board may exercise its discretion to hold an advance hearing sua sponte or at the request of a prisoner.  A prisoner may request an advance hearing by submitting a written request that 'set[s] forth the change in circumstances or new information that establishes a reasonable likelihood that consideration of the public safety does not require the additional period of incarceration." <u>Id</u>. § 3041.5(d)(1).  The Board's decision to deny a prisoner's request for an advance hearing is subject to judicial review.  <u>Id</u>. § 3041.5(d)(2).  Here, as in <u>Morales</u>, an advance hearing by the Board 'would remove any possibility of harm' to prisoners because they would not be required to wait a minimum of three years for a hearing.  514 U.S. at 513.

<u>Gilman</u>, 2011 WL at *5-6.

The Ninth Circuit concluded that "[t]here were no facts in the record from which the district court could infer that Proposition 9 created a significant risk of prolonging Plaintiff's incarceration."

1 | <u>Id</u>. at * 8.  Accordingly, Petitioner's claim to the contrary is summarily rejected.

2 |         D.  <u>Proposition Nine Does Not Violate Equal Protection</u>.

3 |         To the extent that Petitioner's complaint about Proposition 9 can be construed as a claim that it

4 | violates petitioner's equal protection rights, that argument, too, is without merit.

5 |         The Fourteenth Amendment's Equal Protection Clause is "essentially a direction that all

6 | persons similarly situated should be treated alike." <u>Cleburne, v. Cleburne Living Ctr.</u>, 473 U.S. 432,

7 | 439, 105 S.Ct. 3249 (1985).  Petitioner can establish an equal protection claim by showing that the

8 | Respondent intentionally discriminated against Petitioner based on his membership in a protected

9 | class, <u>see</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated

10 | individuals were treated differently without a rational basis for the difference in treatment.  <u>See</u>

11 | <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000)(per curiam).

12 |         Petitioner makes no claim that he is a member of a protected class.  Therefore, to state an equal

13 | protection claim under the latter theory, Petitioner must allege that (1) he was intentionally treated

14 | differently from other similarly situated individuals; and (2) there is no rational basis for the difference

15 | in treatment.  <u>See</u> <u>Engquist v. Oregon Department of Agriculture</u>, 553 U.S. 591, 601, 128 S.Ct. 2146

16 | (2008).  In this case, Petitioner has failed to either provide any basis for showing either that he was

17 | intentionally treated differently than others similarly situated or that there was no rational basis for the

18 | difference in treatment.  Thus, he is not entitled to federal habeas relief under an equal protection

19 | theory.

20 |         In <u>Gilman v. Schwarzenegger</u>, <u>supra</u>, the Ninth Circuit held that Proposition 9 "did not change

21 | the date of inmates' initial parole hearings, and did not change the standard by which the Board

22 | determined whether inmates were suitable for parole." <u>Gilman</u>, 2010 WL 4925439 at *5.  In addition,

23 | even if it is assumed "that the statutory changes decreasing the frequency of scheduled hearings would

24 | create a risk of prolonged incarceration, the availability of advance hearings is relevant to whether the

25 | changes in the frequency of parole hearings create a significant risk that prisoners will receive a

26 | greater punishment." <u>Id</u>. at *6.  Noting that California's Penal Code § 3041.5(b)(4) provides that the

27 | BPH "may in its discretion...advance a hearing...to an earlier date, when a change in circumstances or

28 |

new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner," the Ninth Circuit held that such discretion "would remove any possibility of harm" to prisoners because they would not be required to wait a minimum of three years for a hearing.  Id. at * 5-6.  Accordingly, Petitioner's equal protection claim is also without merit.

**RECOMMENDATION**

For the foregoing reasons, the Court HEREBY RECOMMENDS that the instant petition for writ of habeas corpus (Doc. 1), be SUMMARILY DISMISSED for failure to state a claim upon which federal habeas relief can be granted.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty (20) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __July 13, 2012__            _____/s/ Jennifer L. Thurston___

UNITED STATES MAGISTRATE JUDGE

9